IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LEVERAGE 3650 BUCKNER LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:24-CV-1931-N |
| | § | |
| KINSALE INSURANCE COMPANY, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This Order addresses Defendant Kinsale Insurance Company's ("Kinsale") motion for summary judgment [26] and to motion strike pleadings and dismiss [39].  For the following reasons, the Court denies the motion for summary judgment, denies the motion to strike the amended pleadings, and denies in part and grants in part the motion to dismiss.

## I. ORIGINS OF THE MOTIONS

This case arises from a dispute regarding insurance for two commercial buildings. Kinsale was the insurer for Plaintiff Leverage 3650 Buckner, LP ("Leverage") from September 26, 2022, to September 26, 2023.  Def.'s Mot. to Dismiss and Strike 1 [40]. Leverage filed an insurance claim on July 13, 2023, alleging damage to its roof and exterior elevations from a storm on June 11, 2024 (the "June Storm").[1]  *Id.*  On July 17, 2023 Kinsale appointed an adjuster and an engineer to examine the alleged damage.  Def.'s

---

[1] The Court accepts Leverage's well-plead allegations as true for the purposes of the motion to dismiss.

MEMORANDUM OPINION AND ORDER – PAGE 1

Notice of Removal App. 7 [1]. Kinsale examined the investigation, expert report, and weather data, and then, on October 24, 2023,[2] it denied coverage. Pl.'s Am. Compl. ¶ 17 [36]; Def.'s Mot. to Dismiss and Strike 1. Leverage brought this suit alleging Kinsale's investigation was not reasonable and that it wrongfully denied the insurance claim.

Leverage's original pleading in state court alleges the June Storm caused the building damage. Def.'s Notice of Removal 7. During expert designations, Leverage disclosed that the cause of damage was a windstorm on March 2, 2023 (the "March Storm"). Def.'s Mot. to Dismiss and Strike 1; Pl.'s Resp 2 [45]. This Court granted Leverage leave to amend its complaint to clarify the factual pleading in accordance with its March Storm theory. Order, July 28, 2025 [34].

Prior to the Court granting leave to amend, Kinsale moved for summary judgment. After Leverage filed its amended complaint, Kinsale moved to strike and to dismiss the pleadings under Rule 12(b)(1) and (b)(6), and 12(f).

## II. THE COURT DENIES THE MOTION TO DISMISS UNDER RULE 12(B)(1)

### A. Legal Standard to Dismiss

Under the United States Constitution, a federal court may decide only actual "cases" or "controversies." U.S. CONST. art. III, § 2. A court properly dismisses a case where it lacks the constitutional power to decide it. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The justiciability doctrines of standing,

---

[2] In its response to the motion for summary judgment, Leverage argues Kinsale issued a formal denial letter on November 28, 2023. This is different from Leverage's allegation in its complaint that Kinsale formally communicated its coverage decision in October. The Court's analysis is based on the date in the complaint.

mootness, political question, and ripeness all originate in Article III's 'case' or 'controversy' language." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012) (quoting *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (internal quotation marks omitted)). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

"Standing and ripeness are required elements of subject matter jurisdiction and are therefore properly challenged on a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss." *Roman Catholic Diocese of Dall. v. Sebelius*, 927 F. Supp. 2d 406, 415–16 (N.D. Tex. 2013) (citing *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989); and *WesternGeco L.L.C. v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 350 (S.D. Tex. 2011)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation and internal quotation marks omitted).

### B. The Court has Subject Matter Jurisdiction

Leverage's allegations are sufficient to satisfy the Article III ripeness requirement. Kinsale argues that Leverage's complaint lacks sufficient factual development to establish an injury in fact. Def.'s Mot. to Dismiss and Strike 15–16. However, Leverage references documents relevant to this dispute, including its report to Kinsale of the roof damage and that Kinsale responded with a denial of *all* physical loss. Pl.'s Am. Compl. ¶17. Although Leverage originally pled that the storm happened in June, those pre-suit facts encompass

MEMORANDUM OPINION AND ORDER – PAGE 3

any alleged damage caused by a storm that occurred merely three months earlier than originally stated.  In other words, even if Leverage was incorrect about the timing, the earlier storm is within the coverage time frame, and Kinsale's investigation and denial are facts that establish Leverage did not receive compensation for the storm damage.

Moreover, Leverage alleged a concrete injury and Leverage's damages do not appear speculative on the face of the complaint.  Leverage pleads that a storm damaged its roof causing leaks, that the only plausible remedy is a new roof, and seeks consequential damages for the delay of this remedy.  Pl.'s Am. Compl. ¶¶ 11, 34. Accordingly, the Court finds that Leverage established standing and that its claim is ripe for adjudication.

## II.  THE COURT DENIES THE MOTION TO STRIKE

### A.  Legal Standard to Strike Pleadings

Rule 12 allows the Court to strike "any redundant, immaterial, impertinent, or scandalous matter."  FED. R. CIV. P. 12(f).  The decision to strike material from a pleading lies within the district court's "considerable discretion."  5C WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1382 (3d ed. 2004) [hereinafter "WRIGHT & MILLER"].

> However, because federal judges have made it clear, in numerous opinions
> . . . in many substantive contexts, that Rule 12(f) motions to strike . . . are not
> favored, often being considered purely cosmetic or time wasters, there
> appears to be general judicial agreement, as reflected in the extensive case
> law on the subject, that they should be denied unless the challenged
> allegations have no possible relation or logical connection to the subject
> matter of the controversy and may cause some form of significant prejudice
> to one or more parties to the action.

MEMORANDUM OPINION AND ORDER – PAGE 4

*Id.* (footnotes, internal quotation marks, and citations omitted); *see also Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962) (observing that "'it is well established that the action of striking a pleading should be sparingly used by the courts . . . . It is a drastic remedy to be resorted to only when required for the purposes of justice . . . [or] when the pleading to be stricken has no possible relation to the controversy.'" (quoting *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953))). Courts will also deny a Rule 12(f) motion to strike if the allegations provide a "better understanding of the plaintiff's claim for relief or perform some other useful purpose in promoting the just and efficient disposition of the litigation." WRIGHT & MILLER § 1382 (footnotes and citations omitted).

### B. Leverage's Pleadings are Plausibly Related

Leverage's original complaint alleges that the June Storm caused severe damage to its roof. Leverage's amended complaint alleges the same damage was, instead, caused by the earlier March Storm. Pl.'s Am. Compl. ¶ 11. Specifically, the wind gusts caused widespread membrane uplift, seam separation, tearing around fasteners, and compromised the structural integrity of the roofing system. *Id.*

The paragraphs that Kinsale requests to be struck address basic context surrounding the cause and investigation of the roof damage, the terms of the insurance coverage, and the fact that Leverage notified Kinsale of its intent to seek insurance proceeds. Pl.'s Am. Compl. ¶¶ 6, 10, 12–13, 17, 19, 21-32. Kinsale argues the change of date, and thus change of storm, renders those paragraphs irrelevant. Def.'s Mot. to Dismiss and Strike 6–11.

MEMORANDUM OPINION AND ORDER – PAGE 5

However, these facts have some possible relation to the controversy, and as such, the drastic remedy of striking a party's pleadings is not appropriate. Because the allegations provide a better understanding of Leverage's claim for relief, the Court denies the motion to strike.

### III. THE COURT DENIES IN PART AND GRANTS IN PART THE MOTION TO DISMISS

Leverage brings five claims: (1) breach of contract; (2) violation of the Texas Prompt Payment of Claims Act ("PPCA"), TEX. INS. CODE § 542.001, *et seq*; (3) violation under section 541.060 and (4) section 541.061 of the Texas Insurance Code, *id*. §§ 541.060–61; and (5) violation of the Deceptive Trade Practices Act ("DTPA"). Kinsale moves to dismiss all of Leverage's claims. The Court takes them in turn.

### A. Legal Standard to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation

MEMORANDUM OPINION AND ORDER – PAGE 6

of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### B. *Leverage Alleges a Plausible Breach of Contract Claim*

Under Texas law, the elements of a breach of contract claim are "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App. — Houston [14th Dist.] 2005, pet. denied)).

Here, Leverage first alleges that the "Policy issued by Defendant is a valid and enforceable contract providing coverage for windstorm damage to the insured Property, subject to specific terms and conditions." Pl.'s Am. Compl. ¶ 21. Second, Leverage pleads that it fulfilled its performance by "paying premiums timely and complying with all post-loss obligations." *Id.* Third, Leverage asserts that Kinsale breached the contract by denying its claim for the damage to the property even though the contract covered the damage, and "misapplying exclusions" without justification. *Id.* ¶ 22. And fourth, Leverage alleges that it suffered damages in the amount of the damage to the property as a direct result of Kinsale's breach and expenses to mitigate ongoing deterioration to the insulation and interior water damage. *Id.* ¶ 23. Therefore, Leverage has plausibly alleged that it suffered harm when Kinsale breached a contract by refusing to honor the insurance

terms. Accordingly, the Court denies Kinsale's motion to dismiss the breach of contract claim.

### C. *Leverage Alleges a Plausible PPCA Claim*

The Texas Prompt Payment of Claims Act imposes "deadlines for the payment of certain insurance claims." *Rodriguez v. Safeco Ins. Co. of Ind.*, 684 S.W.3d 789, 792 (Tex. 2024); *see also* TEX. INS. CODE §§ 542.056, 542.058(a). "Failure to meet these deadlines results in statutory liability for interest and reasonable and necessary attorney's fees." *Rodriguez*, 684 S.W.3d at 792 (internal citation omitted). Section 542A governs first-party claims by an insured that arise "from damage to or loss of covered property caused, wholly or partly, by forces of nature, including an earthquake or earth tremor, a wildfire, a flood, a tornado, lightning, a hurricane, hail, wind, a snowstorm, or a rainstorm." TEX. INS. CODE § 542A.001(2)(C).

> When an insurer receives a claim, it has fifteen days to acknowledge its receipt, begin an investigation, and request from the claimant all "items, statements, and forms" that the insurer reasonably believes are necessary to evaluate the claim. Within a further fifteen business days of receiving the "items, statements, and forms," the insurer must inform the claimant, in writing, whether it accepts or rejects the claim.

*Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 653 (Tex. 2021).

Here, Leverage alleges that Kinsale delayed making a decision for three months. Pl.'s Am. Compl. ¶ 26. Leverage provides specific dates supporting its allegations. Leverage claims that it submitted a claim on July 13, 2023 and provided all requested documentation. *Id.* ¶ 12. Additionally, it alleges Kinsale's engineer did not inspect the property until September 30, 2023, and that Kinsale did not communicate its decision to

MEMORANDUM OPINION AND ORDER – PAGE 8

deny the claim until October 24, 2023.  *Id.* ¶¶ 12. 26.  Finally, Leverage alleges Kinsale still has not paid its claim.  Pl.'s Am. Compl. ¶¶ 12, 17–19, 24–27.  Thus, Leverage plausibly alleges that Kinsale violated the PPCA by failing to inform Leverage of its decision within fifteen days from receiving the documentation and failing to pay the claim. Accordingly, the Court denies the motion to dismiss Leverage's PPCA claim.

### *D. Leverage Alleges a Plausible Section 541.060(a)(2) Claim*

Leverage brings three claims under Chapter 541 of the Texas Insurance Code.  Pl.'s Am. Compl. ¶¶ 29–32.  Leverage alleges violations of (1) section 541.060(a)(1); section 541.060(a)(2); and (3) section 541.061.  The Court analyzes sections 541.060(a)(1) and 541.061 first.

Section 541.060(a)(1) provides a cause of action against an insurer that "misrepresent[s] to a claimant a material fact or policy provision relating to coverage at issue."  TEX. INS. CODE § 541.060(a)(1).  Second, section 541.061 governs misrepresentations of the insurance policy.  *Id.* § 541.061.

However, Leverage's sections 541.060(a)(1) and 541.061(a) claims fail as a matter of law, because Leverage has not identified a specific misrepresentation of material fact or misrepresentation of a *policy* provision.  *See, e.g.*, *Thomas v. State Farm Lloyds*, 2015 WL 6751130, at *3 (N.D. Tex. 2015) (explaining that "an insurer does not misrepresent a policy when it disagrees with the insured party as to whether the policy covers a claim").  Here, Leverage alleges that Kinsale misrepresented "clear evidence of wind-induced" damage as cosmetic or maintenance-related in an attempt to remove it from the category of "functional damage" under the policy.  Pl.'s Am. Compl. ¶ 29.  Leverage also alleges "liability was

MEMORANDUM OPINION AND ORDER – PAGE 9

clear" for several reasons.  *Id*.  Thus, Leverage seems to allege that Kinsale wrongfully denied coverage.  *Id*. ¶¶ 17, 30.  Leverage asserts that Kinsale made untrue statements or omitted statements misleading it to believe there was no covered wind-related functional damage despite Kinsale's internal documentation.  *Id*. ¶ 30; *see* TEX. INS. CODE § 541.061.  However, a dispute about coverage is not a misrepresentation of the policy.  *See, e.g.*, *CapLOC LLC v. Liberty Mut. Ins. Eur. Ltd.*, 2021 WL 2551591, at *8 (N.D. Tex. 2021).

Next, section 541.060(a)(2) requires Kinsale to "attempt in good faith to effectuate a prompt, fair, and equitable settlement" and "to promptly provide . . . a reasonable explanation . . . for the insurer's denial of a claim."  TEX. INS. CODE § 541.060(a)(2).

Leverage sufficiently pleaded a section 541.060(a)(2) claim.  Leverage alleges that Kinsale's denial letter is contrary to findings from Kinsale's own adjuster.  Leverage pleads that the adjuster documented anomalies consistent with wind damage but improperly dismissed them.  *Id*. ¶¶ 12–14, 17.  Second, Kinsale's engineer conducted only a cursory investigation and disregarded significant damage to the roof.  *Id*. ¶¶ 15–16.  Leverage, thus, pleads "that Kinsale failed to provide a "reasonable and accurate explanation," and that Kinsale did not conduct a "reasonable, unbiased, and thorough investigation."  *Id*. ¶ 29.  Finally, Leverage pleads that Kinsale still has not paid its claim.  Pl.'s Am. Compl. ¶¶ 12, 17-19, 24–27.  Together, this is adequate to state a section 541.060(a)(2) claim.  *See Arrow Bolt & Elec., Inc.*, 2017 WL 4548319, at *2 (N.D. Tex. 2017); *Exch. Servs., Inc. v. Seneca Ins. Co.*, 2015 WL 6163383, at *5–6 (N.D. Tex. 2015).

Therefore, the Court denies Kinsale's motion to dismiss Leverage's section 541.060(a)(2) claim but grants the motion to dismiss the 541.060(a)(1) and 541.061 claims.

MEMORANDUM OPINION AND ORDER – PAGE 10

### *E. Leverage Alleges One Plausible DTPA Claim*

The elements of a DTPA claim are: "(1) the plaintiff is a consumer; (2) the defendant committed acts 'in connection with the purchase or lease of any goods or services'; (3) the defendant's acts were false, misleading or deceptive; and (4) the acts were a producing cause of plaintiff[']s injuries." *Cushman v. GC Servs., LP*, 657 F. Supp. 2d 834, 843 (S.D. Tex. 2009) (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996)); *see also* TEX. BUS. & COM CODE § 17.50(a)(1).

As a preliminary matter, Kinsale does not dispute that Leverage qualifies as a consumer as defined by DTPA. Additionally, Leverage alleges it sought and purchased insurance coverage from Kinsale. Pl.'s Am. Compl. ¶ 32.

Leverage brings three claims under DTPA. Leverage alleges Kinsale violated DTPA by: (1) "[r]epresenting that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law" in violation of section 17.46(b)(12); and (2) "engaging in an unconscionable action or course of action . . . exploiting [Leverage's] lack of expertise and ability to assess insurance issues" in violation of section 17.50(a)(3). *Id.* Separately, Leverage asserts a DTPA claim under the "tie-in" provision of section 17.50(a)(4). *Id.* ¶ 31.

First, the Court dismisses Leverage's section 17.46(b)(12) claim because Leverage does not allege that Kinsale ever represented that the policies had characteristics or involved rights which they do not have or involve. Rather, as explained above, Leverage's position in this case is that the policies *do* have characteristics and involve rights which Kinsale is failing to recognize appropriately. Such a failure is properly characterized as a

breach of contract, not a misrepresentation. *E.g.*, *Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547, 563 (S.D. Tex. 2012); *see also Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388 (5th Cir. 2014).

Second, the Court dismisses the section 17.50(a)(3) DTPA claim, because Leverage's "unconscionability claim is premised on conduct that occurred . . . after the inception of coverage under the [Policy]." *Tolbert ex. rel. Tolbert v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 657 F.3d 262, 272 (5th Cir. 2011). The Fifth Circuit has found that unconscionability claims "require[] that the seller take advantage of lack of knowledge, ability, experience, or capacity of a person '*at the time of the sale.*'" *Id*. at 272 (citing *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 441 (Tex. 1995) (emphasis in original)). In support of its unconscionability claim, Leverage alleges that Kinsale failed to conduct "a reasonable, unbiased, and thorough investigation," which led them to "wrongfully den[y] coverage." Pl.'s Am. Compl. ¶¶ 5, 29. However, all of Leverage's allegations of misconduct relate to the handling of its claim for coverage — not the inception of the Policy. Accordingly, Leverage's unconscionability claim fails, and the Court grants Kinsale's motion to dismiss the section 17.50(a)(4) claim.

Finally, the Court denies the motion to dismiss Leverage's "tie-in" claim under section 17.50(a)(4). Section 17.50(a)(4) confers a cause of action for a consumer that suffers damages as a result of a violation of Chapter 541 of the Texas Insurance Code. TEX. BUS. & COM. CODE § 17.50(a)(4). As fully discussed above, Leverage has brought three claims under sections 541.060(a)(1), 541.060(a)(2), and 541.061. While the Court has dismissed the misrepresentation claim under section 541.061 due to Leverage's failure

MEMORANDUM OPINION AND ORDER – PAGE 12

to state a claim, the other two claims remain viable.  Because two of Leverage's Chapter 541 claims survive Kinsale's motion to dismiss, so must this DTPA tie-in claim. Accordingly, the Court denies Kinsale's motion to dismiss the section 17.50(a)(4) claim.

### IV.  THE COURT DENIES KINSALE'S MOTION FOR SUMMARY JUDGMENT

#### A.  Legal Standard for Summary Judgment

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

MEMORANDUM OPINION AND ORDER – PAGE 13

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### B. Leverage Produced Sufficient Summary Judgment Evidence to Support a Breach of Contract Claim

Kinsale contends that Leverage lacks evidence showing its property damages were caused by a covered cause of loss under the insurance policy. Def.'s Mot. Summ. J. 14 [26]. Additionally, Kinsale argues Leverage lacks evidence showing Kinsale breached because Kinsale timely and accurately addressed the claim for the June Storm. *Id*. 14–16. The Court disagrees.

Leverage has provided sufficient evidence showing that its property damage resulted from a covered cause of loss. The policy provided that Kinsale would cover "direct physical loss unless the loss is excluded or limited in this policy." Def.'s App. Mot. Summ. J. 9. The policy does not list wind or hail damage as an exclusion, and Kinsale has not

asserted that these causes were excluded.  *See* Def.'s Mot. Summ. J. at 4–5.  Further, Leverage has provided evidence that wind caused the property damage.  One of Leverage's designated experts, provided a report stating that the damage was caused by a storm that occurred within the Policy Period, on March 2, 2023.  Pl.'s App. Resp. Mot. Summ. J. 369, 371.

Kinsale also contends that the damage was cosmetic, and that the policy does not cover cosmetic damage.  Def.'s Mot. Summ. J. 7, 16.  However, Leverage provides additional evidence that the damage was not merely cosmetic.  Leverage's building damage expert found that the roof "sustained stress-related failure at mechanical fasteners and lifting throughout large areas of the field, indicating that the roof no longer functions as a sealed and reliable system."  Pl.'s App. Resp. Mot. Summ. J. 536.  Leverage's second expert also noted the "roof is compromised where the membrane contains rips or tears at the mechanical fastner point of attachment."  *Id*. at 372.  In other words, the damage is beyond cosmetic because the roof "requires full replacement to return the property to its pre-loss condition."  *Id*. at 532.  Thus, a reasonably jury could find that the damage was covered by the policy.

Finally, Kinsale argues that Leverage lacks evidence the June Storm damaged the property, and that Leverage concedes the June Storm is not the cause.  Def.'s Mot. Summ. J. 14.  But this evidence is not dispositive.  First, a reasonable jury may interpret Leverage's initial claim notice as a general agreement that *some* storm damaged its roof; it is not clear that it was referring to only the June Storm.  *See* Def.'s Mot. Summ. J. 79 [A-2] ("*On or around* 06/11/2023, a windstorm and hail damaged the building located at 3650 N Buckner,

MEMORANDUM OPINION AND ORDER – PAGE 15

Dallas, Texas 75228.") (emphasis added).  Second, Leverage provides additional evidence showing that Kinsale considered the March Storm in its investigation.  Kinsale's expert adjuster reported hail up to one inch in diameter and wind speeds up to sixty-two miles per hour at the property in March of 2023, and its engineer looked at weather reports going back ten years.  Def.'s App. Mot. Summ. J. 91, 123.  These reports raise a genuine issue of fact as to whether the March Storm impacted the function of the roof, and whether Kinsale properly denied Leverage's claim.

Accordingly, the Court denies summary judgment on the breach of contract claim.

### C.  Leverage Produced Sufficient Summary Judgment Evidence to Support a PPCA Claim

Chapter 542, also known as PPCA, of the Texas Insurance Code authorizes parties to bring claims for improperly delayed payment of benefits.  TEX. INS. CODE § 542.058. To succeed on a PPCA claim, an insured must show that that the insurer "after receiving all items, statements, and forms reasonably requested and required under Section 542.055, delay[ed] payment of the claim."  *Id*.

Leverage has provided sufficient evidence to raise a fact issue regarding whether Kinsale violated PPCA.  As discussed above, Leverage evidenced that its property sustained damage by a covered cause of loss during the Policy Period and that Kinsale wrongfully rejected its claim.  *See* Pl.'s App. Resp. Mot. Summ. J. 372, 532, 536.  Kinsale argues that Leverage's claim fails because Leverage lacks evidence that Kinsale was untimely.  Mot. Summ. J. 18–19.  But an insurer violates section 542.058 by wrongfully rejecting a claim and thereby delaying payment.  TEX. INS. CODE § 542.058; *See Admiral*

MEMORANDUM OPINION AND ORDER – PAGE 16

*Ins. Co. v. Petron Energy, Inc.*, 1 F. Supp. 3d 501, 510 (N.D. Tex. 2014) ("[T]he Court necessarily concludes that Plaintiff violated the Prompt Payment of Claims Act by erroneously rejecting Defendants' requests for defense and delaying payment of fees and expenses incurred in the Oklahoma Litigation."). Here, Kinsale did not make prompt payment because it rejected the claim outside of PPCA's decision window, and Kinsale never provided Leverage with any section 542.056(d) extension notice. Pl.'s Resp. Mot. Summ. J. 8. In fact, Kinsale still has not paid. *Id.* at 6, *see* Def.'s App. Mot. Summ. J. 77–84. The Court thus denies summary judgment on Leverage's PPCA claim.

### D. Leverage Produced Sufficient Summary Judgment Evidence to Support a Section 541.060 Claim

Section 541.060(a)(2)(A) requires insurers "to attempt in good faith to effectuate a prompt, fair, and equitable settlement" of a viable claim. TEX. INS. CODE § 541.060(a)(2)(A). Kinsale argues Leverage lacks evidence showing that Kinsale acted in bad faith, failed to conduct a reasonable investigation, or failed to provide a reasonable explanation for denial of its claim.

Because Leverage demonstrates statutory violations caused the loss of its benefits, Leverage has provided sufficient evidence to show a genuine dispute as to whether Kinsale violated section 541.060(a)(2)(A). Here, Kinsale's adjuster "documented anomalies consistent with wind damage, including rippling and wrinkling of the TPO roof membranes, which he dismissed based on the alleged absence of any storm-created openings." Pl.'s Resp. Mot. Summ. J.; Pl.'s App. Resp. Mot. Summ. J. 80, 99. Despite this, Kinsale still denied coverage. Pl.'s Resp. Mot. Summ. J. 2.

MEMORANDUM OPINION AND ORDER – PAGE 17

Leverage provides other evidence indicating bad faith such that a jury could determine Kinsale's investigation was unreasonable. For example, Leverage's engineer's report notes several deficiencies. As discussed above, the engineer identified fastner damage "is evident" and that "[t]his type of damage can easily go unnoticed by investagators [sic] who fail to collect samples because the damage is not visible from the surface and is only evident on the underside of the bottom layer of membrane." Pl.'s App. Resp. Mot. Summ. J. 371. Furthermore, Leverage's adjuster notes that Kinsale's investigation was improper because the "'pre-existing damage' rationale appears to relate exclusively to unclaimed signage and does not apply to the roofing systems for which damages are now claimed." Pl.'s App. Resp. Mot. Summ. J. 534.

Based on this, Leverage argues that Kinsale was "unreasonable because it discounted its own weather data identifying March 2023 severe winds at the risk, fixated on non-claimed signage damage as 'pre-existing,' and rejected evidence of functional roof damage documented in the file photographs and expert workups." Pl.'s Resp. Mot. Summ. J. 9. These expert reports raise a fact issue as to whether Kinsale violated section 541.060(a)(2)(A) by failing to act in good faith during the investigation. The Court thus denies summary judgment on this claim.

### E. Leverage Produced Sufficient Summary Judgment Evidence to Support a DTPA Claim

Kinsale argues that Leverage lacks evidence showing it failed to follow statutory guidelines, misrepresented material facts or law, or otherwise engaged in an unconscionable action. *See* Def.'s Mot. Summ. J. 18–19. Kinsale's arguments fail because

MEMORANDUM OPINION AND ORDER – PAGE 18

Leverage's remaining DTPA claim is based on its "tie-in" claim under section 17.50(a)(4). Because Leverage produced sufficient summary judgment evidence for its claim under the Texas Insurance Code, Leverage also has sufficient evidence for a DTPA claim.  *Vail v. Tex. Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 135 (Tex. 1988).  Accordingly, the Court denies summary judgment for the DTPA claim.

## CONCLUSION

Because the amended allegations are plausibly connected to the subject matter of controversy, the Court denies the denies the motion to strike the amended pleadings.  The Court also denies in part and grants in part Kinsale's motion to dismiss.  Leverage's amended pleadings state a plausible claim for its breach of contract, PPCA, section 541.060, and DTPA claims.  Thus, the Court denies Kinsale's motion to dismiss those claims but grants as to Leverage's other claims.  Finally, the Court denies Kinsale's motion for summary judgment because Leverage has shown a genuine dispute of material fact for its remaining four claims.

Signed March 16, 2026.

David C. Godbey
Senior United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 19